## Case No. 7,837.

KIRBY et al. v. BEARDSLEY.

[5 Blatchf. 438; 3 Fish. Pat. Cas. 265; [1] Merw. Pat. Inv. 211.]

Circuit Court. N. D. New York. Sept. 14, 1867.

PATENTS—"HARVESTING MACHINES"—INFRINGEMENT.

1. In the patent issued to William A. Kirby, November 15th, 1859, for "improvements in

combined harvesting machines." and reissued July 9th, 1861, the novelty of the invention, as respects the raker's seat, consists in its location.

2. What is claimed, in the said reissued patent, is an old combination, consisting of three members, placed in new, or supposed new, positions, namely, a cutting apparatus, and a platform having a side delivery, both being placed in rear of a line drawn through the front of the main wheel, and a raker's seat located at the side of the platform, and behind a line drawn through the cutting apparatus.

3. The machine called the "Cayuga Chief" is an infringement of the said reissued patent.

4. The invention claimed in said reissued patent was not new.

[Cited in Smith v. Thomson, 38 Fed. 606.]

5. The shifting of the raker's seat on its support, by the patentee, so as to place it on an angle across the path of the machine, and enable the raker to face in a different direction, was not a patentable invention.

6. The position of the raker on the seat is merely a result of the angle at which the seat is adjusted on its support, and, as a part of a claim in the patent, is mere superfluous description.

[2] [This was a bill in equity filed [by William A. Kirby and David M. Osborne] to restrain the defendants [Alonzo G. Beardsley and others] from infringing letters patent [No. 26,114], for "improvements in combined harvesting machines," granted to William A. Kirby, November 15, 1859, assigned to complainants and reissued to them, July 9, 1861 [No. 1,211].

[The specification annexed to the original patent, after referring to the different parts of the drawings, says: "My invention relates more especially to that class of mowing and reaping machines known as combined harvesters; that is to say, a machine which possesses within itself all the necessary elements to make it either a mowing or reaping machine, as circumstances may require. The general characteristics of much of this machine may be found in the patent granted to me on the 2d day of September, 1856, to which reference is made for those parts not more clearly and distinctly set forth in this specification. The nature of my invention consists, first, in the special arrangement and location of the raker's seat, viz: in the angle formed by the delivering side or edge of the platform and the finger-bar. And secondly, in placing the platform-bar on top of the finger-bar so that they may mutually support each other. In combined reapers and mowers, the changes that are made to convert the machine from one purpose to the other are not always uniform, and therefore the machine must have such susceptibilities of change as will best adapt it to the nature and condition of the ground, and of the crop. In cutting grain, the reel, as a general thing, is always used, but when the grain is much tangled the reel becomes comparatively useless from its inability to disentangle the stalks. In such a condition of the crop, I remove the

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 5 Blatchf. 438, and the statement is from 3 Fish. Pat. Cas. 265.]

[2] [From 3 Fish. Pat. Cas. 265.]

reel, and the grain is gathered and drawn to the cutter by the raker from his seat. who reaches forward with his rake and draws the grain to the cutters in such quantities as the machine may be able properly to sever. This condition requires the raker to have a position that will give him the necessary facilities for doing this work. But when the grain stands in good condition, then the reel is used, and the raker's seat must then be in a good position to enable the raker upon it to clear the platform of the cut grain and leave it in a windrow behind the machine and out of its path on the return swath. Another and important requisite in the arrangement and location of the raker's seat, and beside that of counterbalancing the driver on his seat, and the giving an easy motion to the draft of the machine, consists in giving the raker such advantages of holding and bracing himself in his seat as that the sudden jars to which the machine is constantly subjected when in operation, shall not throw him forward into the line of the cutters; a matter very likely to happen, unless proper precautions be taken to avoid it."

[The specification then refers to the condition of the machine when converted into a mower, and to the fact that much study and experiment was required of the inventor to so arrange and combine the mechanism as to effect that object, and to secure a sufficiently strong and well-balanced machine for the work demanded. Directions are then given with reference to the drawings for the purpose of enabling others skilled in the art to make and use the invention described. The specification then concludes with the following claims: "Having fully described the nature and object of my invention, what I claim therein as new, and desire to secure by letters patent, is the particular arrangement and location of the raker's seat in the angle formed between the finger-bar and the side of the platform, as set forth. I also claim the placing of the platform-bar on top of the finger-bar when the platform is used, so that they shall mutually support and strengthen each other, substantially as herein described."

[The specification of the reissued patent describes the nature and object of the invention as follows: "The duty of a raker upon a grain harvesting machine being a laborious one, it is important that he should be in such a position as to enable him to discharge these duties as effectually and with as little labor as possible. He may be at times compelled to reach with his rake into the grain that is about to be cut. to raise it up or disentangle it. He often must clear the outside divider of the cut grain that is apt to lodge and hang upon it, and must at all times keep the platform swept clean as fast as sufficient straw has accumulated to form a gavel, and this gavel must be deposited on the ground in good shape for binding. and out of the return path or swath of the machine. To find a location upon, or in connection with a grain-harvesting machine that will enable the raker to discharge these duties with ease to himself, was the purpose and object of William A. Kirby's invention, and to this end, without impairing any of the other operating parts of the machine, he devised the hereinafter described construction and operation of the parts to accomplish the desired purpose: The nature of the invention of the said William A. Kirby consists in combining with a cutting apparatus and platform having a side delivery, and both places in rear of a line drawn through the front of the main wheel, the raker's seat located at the side of the platform, and arranged so that the raker sits behind the main frame and facing the falling grain, from which location he can, with great ease to himself, watch the operation of the cutting apparatus, take off the grain from the platform, and deliver the gavels in good shape for binding upon the ground. From the above statement of the purpose, object, and nature of the said Kirby's invention, it will be perceived that there are several restrictions attaching thereto, but requiring the aggregate of the whole to accomplish the purpose aimed at. In the first place, the cutting apparatus must be placed in the rear of a line drawn through the front of the main wheel so as to bring the cut grain as near the place of delivery as possible, which is in rear of the main frame. If the raker had to reach clear forward to the front of the machine or main frame, and draw the gavel to the rear of it, it would increase his labor beyond his physical endurance, and hence the cutting apparatus and platform must be in rear of that line. And as an auxiliary to the platform placed as above described, it must have a side delivery, so that the gavel can be easily delivered therefrom in good shape for binding, and in a position that will not interfere with the next or return swath of the machine. In the next place, the raker's seat must be located behind a line drawn through the cutting apparatus, so that he may, when it becomes necessary. reach into the grain about to be cut, or that just cut, to raise it up, disentangle it, or deliver the gavel on the ground in a good and convenient position. If the raker were placed in or too near the line of the cutter, he could not, because of the reel. reach to the outside divider, to draw the hanging grain from it, and hence the location of the seat behind the cutting apparatus, as above stated. Again, the raker's seat must be at the side of the platform, so that an easy and short movement of his rake may draw the grain to its point of delivery. If he were on the platform his weight would add much to the side-draught of the machine, which of itself is a sufficient objection to placing him there, but he could not, at any point on the platform, rake off the grain without a greater sweep of his rake, arms, and body than when at the side of it, and hence the location of the seat at

the side of the platform, as above stated. Again, the raker's seat, is located in rear of the main frame because the gavels are delivered at that point, and his position there, while it does not interfere with any of his other duties, enables him to deliver the gavels in good shape for being bound, and out of the path of the machine on its next round. And lastly, the raker's seat located so that the raker may sit upon it facing the falling grain. This enables him to see when the grain is entangled, or about to become so, and raise it up or draw it off from the outside divider, and in every respect work with more ease and comfort to himself than when he sits with his back to the horses."

[After an elaborate description of the way to make and use the machine, the specification adds: "It will be seen that by the peculiar location of the raker's seat at the side of the platform, and the manner of hanging said seat, the raker can deliver the gavel at any portion of the side of the platform most convenient to himself, and enabling him to change his point of delivery, and then much relieve himself by changing the sweep of his body and arms in his laborious task. It also enables the raker to more readily seize with his rake the cut grain, whatever may be its position on the platform; for when the grain leans on the ground, or is entangled, it will, when cut, fall sometimes in one position on the platform, and at other times in different positions; but in all or any of its positions, with this location of the seat and the facility for delivering the cut grain, the raker, with comparative ease, accomplishes his work. Having fully described its objects and purposes, what is claimed as the invention of said William A. Kirby, is: In combination with a cutting apparatus and a platform having a side delivery, and both placed in rear of a line drawn through the front of the main wheel, the raker's seat located at the side of the platform, and arranged so that the raker sits behind the main frame and facing the falling grain, substantially as described."] [3]

David Wright, for plaintiffs.
Samuel Blatchford, for defendants.

SHIPMAN, District Judge. On the 15th of November, 1859, a patent was granted to William A. Kirby, for certain new and useful "improvements in combined harvesting machines." This patent was subsequently, and before the 9th of July, 1861, assigned to the plaintiffs in this suit, and, on the last named date, they received a reissue of the same, on an amended specification.

Upon this reissued patent the present bill for an injunction and an account is founded. As the original patent was referred to in the answer, and put in evidence, it may be well to refer to its contents here, in connection with the reissue, as it throws some light

[3 [From 3 Fish. Pat. Cas. 265.]

on the true construction of the latter. It will be seen, by a comparison of the two specifications, that they differ in their description of the utility of the invention, and in the form of the claim. There are two claims in the original, but, as the second one is left out of the reissue, the first only will be referred to here. That claim, as stated in original, was as follows: "What I claim as new, and desire to secure by letters patent, is, the particular arrangement and location of the raker's seat, in the angle formed between the finger bar and the side of the platform, as set forth." In the reissue, this claim is thrown into the following form: "In combination with a cutting apparatus and a platform having a side delivery, and both placed in rear of a line drawn through the front of the main wheel, the raker's seat located at the side of the platform, and arranged so that the raker sits behind the main frame and facing the falling grain, substantially as and for the purpose described."

By a comparison of the claim as originally stated, with the drawings, or with the stereoscopic exhibits, Nos. 9 and 10, of a machine built under the patent, this arrangement and location of the raker's seat, which was asserted to be the invention sought to be protected by the patent, will be clearly seen. The main frame, to which the cutting apparatus was attached, and from which it projected to the right, at right angles to the path of the machine, was supported by one large wide-rimmed driving-wheel. This wheel was placed towards the extreme left of the main frame, and the driver's seat was placed directly over it. The edge of the delivery side of the platform was a straight line, extending backwards, at an angle of about eighty degrees, to the finger-bar. The line of the finger-bar, extending to the left, from the point where the edge of the side delivery of the platform joined it, formed, therefore, an angle of about one hundred and ten degrees. To the rear of, at a greater elevation, and facing the apex of this angle, the raker's seat was located. The original patent claims this "arrangement" and location of the seat in this angle, (or facing this angle). But no vital force can be given to this term, "arrangement," beyond that of indicating the relative position of the seat with reference to the other parts of the machine. It was secured to the solid and weightier parts of the frame by ordinary and well known mechanical means. The whole novelty was in the particular location of the seat. From the seat so located, as the original specification alleges, the raker could reach forward, disentangle the uncut grain, when its disordered condition required it, and draw it to the cutters, to be severed. When the uncut grain was erect, so that the reel would bring it properly to the cutters, the raker could, from this location of his seat, sweep the platform of the cut grain,

and leave it in a windrow behind the machine, and out of its return path on the next round. The balancing of the machine, and the bracing of the raker in his seat by placing his feet in the stirrups, are also referred to as advantages gained. But it is not important to dwell on these latter features here. As already stated, the novelty consisted in the location of the raker's seat, and was well described in the first claim of the original specification.

What particular difficulty the patentee encountered, which rendered his patent in this form inoperative to secure his rights, by which a reissue became necessary, does not appear very clearly. Whether it was feared that a mere new position of one of the elements of an old combination did not alone furnish tenable ground upon which the patent could stand; or whether the language of the claim, fixing the location of the seat "in the angle formed between the finger-bar and the side of the platform," was deemed a restriction of the patent within narrower limits than the invention really made; or whether merely a different and apparently more comprehensive mode of stating the invention claimed, was thought more desirable, is not manifest. For some reason, however, a reissue was deemed advisable, and the draughtsman of the specification, after enlarging upon the difficulties to be overcome, and the success with which they were to be surmounted by this new location of the raker's seat, proceeded to put the claim in the form of a combination, consisting of three members, namely, a cutting apparatus, a side delivery platform, and a raker's seat. Here he was confronted with a difficulty—probably the same one which deterred the draughtsman of the original from calling it a combination at all—and that was, that the combination was old. In order to remove this difficulty, it was apparent that some element or elements of novelty must be introduced, in order to support the alleged invention as a new combination. The first two members, the cutting apparatus and the platform, were, therefore, qualified by the condition, that they were both to be placed in the rear of a line drawn through the front of the main wheel. The last member, the raker's seat, was to be located at the side of the platform, so that the raker could sit behind the main frame and facing the falling grain. It is, also, clearly inferable, from the tenth paragraph of the specification, that it was intended to claim, in regard to the location of the raker's seat, that it should be behind a line drawn through the cutting apparatus. Indeed, this inevitably results from the location of the other parts of the machine.

Now, it is perfectly obvious, that the only features of this combination, as thus stated, which look towards novelty, are those which relate to a change or supposed change in the location of the members—the first two in

rear of a line drawn through the front of the main wheel, and the third at the side of the platform, and behind a line drawn through the cutting apparatus. The form and angle of the raker's seat, with reference to the way the raker is to sit and face his work, may be laid out of the case. The shape of the seat is not claimed, nor the angle at which it faces, and the position of the body of the raker on the seat can form no element in, or material qualification of, the combination. The way the raker faces is not a part of the organized mechanism, but a result of it. It may be, and doubtless is, one of the useful objects of the invention, but it forms no part of the invention itself. I do not overlook the fact that the claim states, not only that the raker's seat is located at the side of the platform, but that it is "arranged so that the raker sits behind the main frame and facing the falling grain." The relative position or location of the seat being fixed upon where it is, of course the raker sits behind the main frame. This location being given, whether he sits facing the falling grain or not, so far as any agency of the machine is concerned, depends upon the form of the seat, and the angle at which it is placed. The fact is, he sometimes faces the standing grain. This he does when he reaches forward with his rake, to raise it up and bring it to the cutters. Perhaps it would be more accurate to say, that he then faces the standing and falling grain. When the uncut grain is erect, and he can devote his whole attention to clearing the platform, then he may be said to face the fallen grain. The arrangement referred to in the words, "arranged so that the raker sits facing the falling grain," when considered apart from the location of the seat, or as qualifying it, can include nothing more than the form of the seat and the angle at which it shall face to the right. As already stated, the form is not claimed, nor is the angle at which the seat shall be placed, within any fair construction of the claim. If any precise angle had been claimed, then a seat at a different angle would have been no infringement. To say that every angle on the right half of a circle having its center in the center of the seat is claimed, would be absurd. That no such claim was intended, is evident from the fact, that it was designed that the raker should sit with the beam, which supports the seat, between his legs, with his left foot on a brace, (w in the drawings,) to the left of the beam, and his right foot on the platform, at a point (x in the drawings) near the point where the edge of the platform unites with the finger bar.

This beam runs forward parallel to the path of the machine. Therefore, the seat could not face to the right at any very great angle, in view of the arrangement described in the specification. But I shall have occasion to recur hereafter to the angle at which the seat is to be placed, and its legal relation

[Drawings of reissued patent No. 1,211 granted July 9, 1861, to W. A. Kirby; published from the records of the United States patent office.]

Fig. 1.

to the subject matter of the invention. What is really claimed in the re-issue is an old combination, consisting of three members placed in new, or supposed new, positions, namely, a cutting apparatus, and a platform having a side delivery, both being placed in rear of a line drawn through the front of the main wheel, and a raker's seat located at the side of the platform, and behind a line drawn through the cutting apparatus, substantially as described. Now, assuming, for the purposes of this case, that this old combination, in this relation, arrangement, or location of members, is an invention, within the meaning of the patent act, I will, after briefly referring to the fact of infringement, proceed to consider whether, on the proofs, the plaintiff Kirby first originated it.

As to the infringement by the defendants, there can be no doubt. They are engaged in the manufacture of a machine called the "Cayuga Chief," designed by Cyrenus Wheeler, Jr. This machine is clearly an infringement of the alleged rights of the plaintiffs under the Kirby patent, as I have construed the specification and the claim of that patent. The "Cayuga Chief" contains the same combination of three members, namely, a cutting apparatus, a platform with a side delivery, and a raker's seat. These are all arranged and located in substantially the same manner and positions as the corresponding parts in the Kirby machine, and for the purpose of accomplishing the same ends. The cutting apparatus and platform are in rear of a line drawn through the front of the main wheel, (or wheels,) and the raker's seat is located at the side of the platform and behind a line drawn through the cutting apparatus. This position of the raker, with a properly formed and adjusted seat, enables him to do precisely what the raker on Kirby's can do, and in precisely the same manner. This is conclusive on the question of infringement.

I now come to the question of priority of invention. The defendants have set up various machines of Wheeler, for the purpose of ante-dating Kirby in the location of the elements or members of the combination—a combination which the machines of both always embraced, but which was originated by neither. The only novelty which either can lay any claim to is in the location of the parts. The date of Kirby's alleged invention may be fixed at 1856. Wheeler built his first combined machine in 1854, and used it successfully that year. He took out a patent for it in February, 1855, but this patent did not claim the invention now in controversy, though his machine clearly had all the members of the combination, namely, a cutting apparatus, a platform with a side delivery, and a raker's seat, separate and apart from the driver's seat. His raker's seat and platform were both of them located in rear of a line drawn through the front of the main wheels. So much appears by a glance at the drawings annexed to his patent dated February 9th, 1855. But these drawings represent the location of the raker's seat to be forward of a line drawn through the cutting apparatus, and forward of the platform, and, therefore, not at its side. But the defendants introduced Wheeler, the inventor, and several witnesses who assisted him in building and operating the machine as it was put in practice, and others who witnessed its operation. They testify that, in point of fact, the machine, as built and used, had the raker's seat located behind a line drawn through the cutting apparatus, and at the delivery or left side of the platform, and that this machine was used also in 1855, the only change in it being the removal of the castor wheel further back. Witnesses farther testify, that other machines were built by Wheeler, and put in operation, every year after that, and that they all had the raker's seat in the same relative position. The plaintiffs here introduced several machines built by Wheeler, commencing with the old blue or Harvey Morgan machine. This latter, built in 1857, shows conclusively, that the raker's seat was in rear of a line drawn through the front of the main wheel, behind a line drawn through the cutting apparatus, and at the side of the platform, though farther from it, and not exactly in the angle described and claimed in the original Kirby patent. Other machines built by Wheeler, and introduced by the plaintiffs, show the same relative location of the raker's seat, cutting apparatus, and platform. The defendants' witnesses say, that the location of the raker's seat relatively to the other parts of the machine was the same, from the

first one built in 1854 down. Now, it is insisted by the plaintiffs, and not without force, that the original description of Wheeler's machine in 1854, as presented to the patent office, does not show this location of the raker's seat, but does show the reverse, and that the representations of the machine, then put in tangible form to the eye, are subject to no lapses of memory, and ought to prevail over the recollection of witnesses who testify after a period of years has intervened. It is, however, a familiar fact, that inventors, when putting their machines in operation, often depart, in constructing them, from the precise configuration of their drawings and models, especially in particulars that are not deemed of prime importance. In this instance, it is clear, that the particular location of the raker's seat was not deemed a matter of great moment. It was no part, or at least was not claimed as a part, of Wheeler's invention; and we find that, in point of fact, this location of the raker's seat, as shown by Wheeler's drawings in 1854, was departed from at least as early as 1857. This the old blue machine, already referred to, and represented in the plaintiffs' stereoscopic exhibits Nos. 1 and 2, conclusively proves. Now, the witnesses for the defendants, already referred to, swear that this departure took place at the start, in 1854, and has so continued. Several of these witnesses testify under circumstances which, if they are honest men, must give their statements great weight. They aided in the construction of the machines and in operating them in the field. Their attention was repeatedly concentrated on the manner in which they performed their work, as labor-saving machines. Some of them assisted in raking off, occupying, at least a portion of time, the raker's seat. The relative position of the seat, as distinguished from its position as shown by Wheeler's drawings annexed to his patent, was marked and striking. These machines are large objects, and present the difference broadly to the eye, especially to the eye of one operating with the rake from the seat. The position affects the raker's manner of doing his work, and the exertion and fatigue consequent upon performing the labor. It is difficult, therefore, to see how they can be mistaken on so prominent a feature of the machine with which they were so familiar. This change of the location of the raker's seat, from the beam over and forward of the castor wheel, as shown in the drawings of Wheeler's patent of 1855, to its location on a piece of scantling at the side of the platform and considerably behind a line drawn through the cutting apparatus, as we find it in the old blue machine of 1857, is so radical, marked, and decided, that the time of this change must have been remembered by those who made it or were familiar with it, if it were made after the beginning in 1854. If the raker's seat was occupied at these two widely different points in harvesting, the operators could not have failed to notice and remember it. Every muscle in their bodies would have conspired to impress their memories with such a change.

I am, therefore, led to the conclusion, that Wheeler did, at first, place his raker's seat substantially in the position that we find it in the old blue or Morgan machine, in 1857. In the latter, it was undeniably in rear of a line drawn through the cutting apparatus and at the side of the platform. The cutting apparatus and platform are both behind a line drawn through the front of the main wheels. Here we find every condition embraced in the reissued Kirby patent, except that which refers to the arrangement of the raker's seat, so that the raker sits facing the falling grain, which has already been discussed, and which I will refer to again. It is true, that the raker's seat on the old blue or Morgan machine, cannot be exactly said to be in the angle formed between the finger-bar and the side of the platform, as claimed in Kirby's original specification. It is rather to the left of this angle. But that restricted location was abandoned in the reissue, and the claim was expanded sufficiently to cover a seat placed in rear of the other parts of the machine, and by or opposite the left side of the platform.

From what I have already stated, it will be seen, that the only novelty within the scope of the present controversy, which it is possible to claim for Kirby's machine over that of Wheeler's, as shown in the Morgan, is that which describes it as so arranged that the raker sits facing the falling grain. The language of the claim includes the words, "sits behind the main frame;" but this is an inevitable consequence, common to both machines, with this location of the raker's seat. This position of the raker, facing the falling grain, is deemed important by the plaintiffs, and they call attention to it in their bill, by printing this part of the language of the claim in italics and capitals.

Now, what is this arrangement of the seat which enables the raker to sit facing the falling grain? It is not any peculiar manner in which the support of the seat is secured to the main frame, nor any peculiar combination of this support with, nor any peculiar relation of it to, the main frame. This support is a small beam, slightly, or it may be slightly, curved, with its forward end bolted to the solid parts of the main frame, in the ordinary way. On the rear end of this beam or support, the raker's seat is located. This seat, on the Kirby machine, is and was so adjusted on the end of the support, that it faced at an angle more or less to the right of the path of the machine. On the Wheeler machine, down at least to and including 1857, and I think down to, but not including, the "Cayuga Chief" in 1861, the seat faced forwards, or backwards, or both, in a line parallel to the path of the machine. The cleats at the sides, and the stirrup or footboard below, on the Morgan machine, clearly show this. (See, also,

stereoscopic exhibits Nos. 3 and 4.) By these latter exhibits, we see that the operator cut out the right hand cleat, and cut into the seat a place to receive his right leg, so that he could face his work by a less twist of his body. It is, therefore, clear, that Wheeler originally expected that the raker would sit with either his face or back to the driver; so that, when sitting naturally and unemployed in his seat, with his face to the driver, he would look forward in a line parallel to the path of the machine, and, when with his back to the driver, he would look backward in a line parallel to the path of the machine. Whatever was necessary to enable him to look towards the falling grain was not provided for in the·form of a seat, nor in the angle at which it was placed, but was left to his own discretion, and to the voluntary movements of his own body towards the point where his work demanded his attention.

Now, it will at once be seen, that the whole question of novelty involved in this part of the case, is reduced to turning the front of the seat more or less towards the platform. This could be done either by turning it on a bolt through its center, like an ordinary revolving seat or turn-table, or by simply changing the form of the seat. The latter was done in a rude way, by the owner or operator of the machine, as represented in stereoscopic exhibit No. 3. So far as any changes in the form of the seat, necessary to accomplish the object, are concerned, they are simple, well known, and the common property of the race. The same may be said of moving the seat on a center, freely or rigidly, so that its front may be presented at any angle most convenient to the worker. Such a change is no more patentable than revolving the seat board of a piano stool, or changing the position of a common chair on the floor of a parlor. The change of the raker's seat, so that it may face any particular angle, is an act of purely manual adjustment, which any one and every one is free to make. It is not, strictly speaking, even a mechanical, but only a manual change, where the fastening is by a single, central bolt. The change necessary to present the front at a different angle, would, in changing the ordinary mode of a rigid fastening, or changing the form of the seat, be mechanical; but such a change would involve no invention, any more than the cutting out of the place for the raker's right leg in the machine referred to would be an invention. Such changes could be made without in the least altering the principles of the mechanism or the relative arrangement of its parts. Granting, therefore, that Kirby was the first to give the front of his seat board an inclination to the right, I do not think that act involved any element of novelty or invention, in the eye of the patent law. I am well aware, that it is often no easy task to draw the true line of distinction between invention, the product of original thought, and mere obvious manual changes, following the beaten track of mechanical experience. This difficulty, in connection with the general merit of inventors, as contributors to the material interests of society, has inclined courts to give a liberal construction to the law, so as to protect every contrivance that can be called new, which proves at all useful. Care has been taken to give the benefit of doubt, as to originality or creative thought, to the inventor, so as to nourish inventive enterprise by lending encouragement to every degree of merit. This is the more important, as simple contrivances, the offspring of simple, even involuntary thoughts, often produce great and beneficial results, while complex and elaborate ones, the product of long and profound cogitation, not unfrequently prove comparatively or wholly abortive. But it is obvious that there is a limit beyond which mere changes cannot and ought not to receive this protection. I think the law never intended that it should cover a change like this, of merely turning a seat at a different angle, regardless of the means by which the change is to be accomplished. There is nothing in the present case that calls for any struggle on the part of the court to extend the protection of the law beyond its obvious and natural limit. Neither Kirby nor Wheeler is a pioneer in this field of invention. They are both gleaners where others have gathered the principal harvest. The heat and burden of the day fell on those who first surmounted the great difficulties which originally confronted inventors in their efforts to produce successful machines for harvesting.

From these views, it will be seen that I hold: 1st. That the combination of a cutting apparatus·and a platform having a side delivery, both placed in rear of a line drawn through the front of the main wheels, with a raker's seat located at the side of the platform, and behind a line drawn through the cutting apparatus, substantially as described in the reissued Kirby patent, was made by Cyrenus Wheeler, Jr., as early as 1854; 2d. That, though the front of the raker's seat, so located and combined, was first shifted on its support by Kirby, and placed at an angle or diagonally across the path of the machine, this change was not an invention, but only a manual change in the mode of use, and, therefore, not patentable; 3. That the position of the raker on the seat, facing the falling grain, is no part or qualification of the combination, but the mere result of the angle at which the seat is adjusted on its support, and, as a part of the claim, is mere superfluous description.

A decree must be entered, dismissing the bill, with costs.

[For a case involving a similar patent, see Case No. 7,838.]