SMITH v. THOMSON et al.

(Circuit Court, N. D. New York. May 6, 1889.)

PATENTS FOR INVENTIONS—OVERSHOE CLASPS.

Letters patent Nos. 303,547 and 303,596, issued to Edward S. Smith August 12, 1884, for improvements in spring-clasps, used principally on arctic overshoes, having a spring-seated holding-lever, which is adapted to be thrown open or closed by means of the fingers, are void for lack of patentable novelty Prior to his improvements spring-clasps composed of a base-plate, spring, and swinging tongue were well-known to the art, and there is no invention in hinging the tongue to the so-called spring-arms, instead of to the base-plate, or in substituting flat bearings for round bearings.

In Equity.

Bill for infringement of patents, filed by Edward S. Smith against Judson L. Thomson and John Hunter.

Charles E. Mitchell and George E. Terry, for complainant.

George W. Hey, for defendants.

COXE, J. This is an action of infringement, based upon two letters patent granted to the complainant August 12, 1884, for improvements in spring-clasps, and numbered, respectively, 303,547 and 303,596. The applications were filed April 25, 1884. The fifth claim of 303,547 is the only one alleged to be infringed. It is as follows:

"(5) In a spring-clasp, the combination with the base-plate of spring-arms, S, S, formed and attached separately to said plate, substantially as described."

The invention relates to that class of spring-clasps which are used principally on arctic overshoes, and "which are provided with a spring-seated swinging holding-lever, constructed so as to engage with a holding-loop or slotted attaching plate, and secure or release the same as said lever is closed or opened." The spring-arms are made of spring metal, and in shape conform to the base-plate, which also may be of spring metal. They have their forward ends curved to form pivot-sockets. Although this is the form shown in the drawings, the specification suggests that the sockets may be formed on the holding-lever and the pivots on the arms. In September, 1875, a patent was granted to Sylvanus Lyon for a clasp intended for use on pocket-books. It shows, in a spring-clasp, the combination with a base-plate of spring-arms, formed and attached separately to said plate. The claim is as follows:

"The combination of the frame, A, hinged clasps, C, and springs, D, D, substantially as and for the purpose set forth."

The difference suggested between Lyon's device and the device of the fifth claim is that the spring-arms of the former are not provided with pivot sockets. On the 22d of July, 1884, a patent—No. 302,448—was issued to the defendant Thomson for a shoe-clasp, the application being filed March 4, 1884. It shows a base-plate formed from a metal blank having an extension of sufficient length to be rolled up to embrace a hinge-pin. The tongue, provided on the underside with a cam, is hung on this pin. To the base-plate is riveted a spring-plate provided with

spring-arms which operate to control the tongue, but these arms do not show pivot sockets.  The second and third claims of No. 303,596 are the only ones in controversy.  They are as follows:

"(2) A spring-clasp, the swinging lever whereof is provided with flat-sided pivots, and the base with corresponding seats or bearings, substantially as described.

"(3) The combination with the arms, 3, having flat seats or bearings, 5, of the swinging lever having flat pivots, and a supporting spring, substantially as described."

The improvements covered by these claims "relate to that class of clasps which have a spring-seated holding-lever that is adapted to be thrown open or closed by the manipulation of the fingers.  Such clasps are especially useful as fastenings for overshoes, pocket-books, and like articles."  The clasp consists of three parts,—a base-plate, a tongue, and a spring, by which the tongue is controlled.  The tongue is provided with rectangular pivots to rest in similar seats.  The pivots are formed by leaving them in the condition in which they are when cut from the sheet-metal.  The flat surfaces thus left are suited to rest snugly upon the flat bearings of the sockets.  The complainant concedes that, prior to his improvement, spring-clasps composed of a base-plate, a spring, and a swinging tongue were well known in the art, but he confines the invention to the single feature of providing the lever with flat-sided pivots, and the base with corresponding seats; and this he insists was new and patentable.  In 1875 Louis Messer received a patent for a fastening for pocket-books in which the swinging lever is provided with flat-seated pivots, and is so arranged that by the action of the spring the hook is firmly held in two different positions,—open and shut.  In 1876 a patent was granted to Louis Prahar for a pocket-book fastener, consisting of a base-plate, a swinging tongue, and a spring to hold the tongue in place, both when fastened and unfastened.  In the same year a patent for a similar clasp was granted to Daniel M. Read.  In 1878 another patent was granted to Prahar for a spring-clasp for pocket-books and other articles, consisting of a base-plate, a tongue, and a spring to operate the tongue so as to hold it securely when closed and when opened.  King and Hammond obtained a patent for a spring shoe-clasp in 1879.  The tongue has flat, or nearly flat, pivots, and when opened or closed is held by the spring.  In June, 1882, a clasp very similar to the patented clasp was made under the direction of the defendant Thomson, and in June, 1883, it was shown to the complainant; the only appreciable difference between this and the complainant's device being that in the former the tongue, though it has flat-sided pivots, has not flat seats or bearings upon which the pivots rest.  Various other patents and exhibits are introduced showing shoe-clasps so similar in appearance and operation that only a careful examination discloses a difference in minor details.  The art was far advanced when complainant's patents were issued.  The field was, at best, a limited one.

The defenses are anticipation and lack of patentable novelty.  Infringement of the claims of No. 303,596 is denied.

In view of the facts disclosed by the record it is thought that none of the claims covers a patentable invention. To produce the devices shown and described involved structural changes merely, not above the intellectual capacity of the mechanic. In the first patent the tongue, instead of being hinged to the base-plate, is hinged to the so-called spring-arms. In the second patent flat bearings have been substituted for round bearings. In neither patent is a new principle involved, or a new result accomplished. The devices of the complainant may work better, perhaps, and may be improvements on what preceded them, but, with the art crowded to repletion with similar structures, it cannot be held that changes so inconsiderable involve invention. *Collins Co.* v. *Coes*, 47 O. G. 523, 9 Sup. Ct. Rep. 514; *Brewing Co.* v. *Gottfried*, 128 U. S. 158, 169, 9 Sup. Ct. Rep. 83; *Plow Co.* v. *Kingman*, 46 O. G. 1107, 9 Sup. Ct. Rep. 259; *Harwood* v. *Railway Co.*, 11 H. L. Cas. 654; *In re Blandy*, 1 MacArthur, Pat. Cas. 552; *Kirby* v. *Beardsley*, 5 Blatchf. 438; *Sangster* v. *Miller*, Id. 243; *Knox* v. *Murtha*, 9 Blatchf. 205; *Cluett* v. *Claflin*, 30 Fed. Rep. 921, and cases cited.

Although the decision may well be rested upon the lack of patentable novelty, a few words upon the question of infringement may, with propriety, be added. The defendants' device consists of a clasp formed of two flexible plates having each two arms. Between them is hung a swinging tongue with flat-sided pivots, which rest in corresponding rectangular depressions in the spring-arms of the plates. These plates are secured together by a metal strap. When the tongue is moved by the hand the square pivots are turned and pry apart the free ends of the spring-arms. Although, broadly speaking, this device embodies the elements of the claims of No. 303,596, the mode of operation is essentially unlike that of the patented clasp. It is different in result, in appearance, and in the construction of the parts, which are not substantially like those described in the patent. The tongue of the defendants' clasp has no end or cam resting upon and supported by the extremity of the spring, and constituting a bearing for the spring. The spring described in the patent is not found at all. The only spring action in defendants' device is that caused by prying open the jaws of the plates when the square pivots of the tongue are turned. When the clasp is locked with the slotted plate the strain comes, not on the flat side of the pivots, but on the edge. The spring-arms do not operate to produce a leverage in holding the tongue in position when subjected to this strain, as does the spring of the patent. There is no strain tending to force the arms apart. The line of draft is against the ends of the rectangular bearings, in which the pivots fit snugly.

As to patent No. 303,547, although the defendants' experts deny infringement, their counsel expressly admits that "if the patent is valid it is unquestionably infringed." Infringement of No. 303,596 is strenuously denied by experts and counsel alike. If a broad construction can be placed upon the claims there will be no difficulty in finding infringement. But if, upon any theory, the claims can be sustained, it would seem that they must be restricted within such exceedingly narrow limits

that infringement of No. 303,596, at least, is by no means free from doubt. There is little room for monopoly in this art. The language of Mr. Justice BRADLEY in *Bragg* v. *Fitch*, 121 U. S. 478, 7 Sup. Ct. Rep. 978, seems peculiarly applicable. In dealing with a somewhat similar structure he says:

"One would hardly suppose that a patentable invention could have been made in relation to this little device. But many patents have been, and probably more will be, granted. * * * It is obvious from the foregoing review of prior patents that the invention of Bristol, if his snap-hook contains a patentable invention, is but one in a series of improvements all having the same general object and purpose; and that in construing the claims of his patent they must be restricted to the precise form and arrangement of parts described in his specification, and to the purpose indicated therein."

See, also, *Fuller* v. *Yentzer*, 94 U. S. 288; *Sharp* v. *Riessner*, 119 U. S. 631, 7 Sup. Ct. Rep. 417; *McCormick* v. *Talcott*, 20 How. 402; *Burr* v. *Duryee*, 1 Wall. 531; *Railway Co.* v. *Sayles*, 97 U. S. 564.

The bill is dismissed.